**HANNI M. FAKHOURY**
California Bar No. 252629
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5008
Telephone: (619) 234-8467
Hanni_Fakhoury@fd.org

Attorneys for Mr. Gutierrez-Lopez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

**(HONORABLE WILLIAM Q. HAYES)**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **DAVID GUTIERREZ-LOPEZ**, ) <br> ) <br> Defendant. ) <br> _____ ) | CASE NO.: 08CR3238-WQH <br><br> STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS |

**I.**

**STATEMENT OF FACTS**

Based on the discovery provided to Mr. Gutierrez-Lopez by the government, on January 20, 2008, Mr. Gutierrez-Lopez was apprehended by Border Patrol agents and placed into deportation proceedings. See Exhibit A (Declaration of David Gutierrez-Lopez). That same day, Mr. Gutierrez-Lopez entered into a stipulated request for removal order and waiver of hearing. See Exhibit B (January 20, 2008 Stipulated Request for Removal Order and Waiver of Hearing).[1] As detailed in the declaration attached as Exhibit A, Mr. Gutierrez-Lopez was told if he signed the form, he would be returned to Mexico quickly. Without the

---

[1.] The Notice to Appear was not contained in the discovery provided by the government. Based on other documents contained in the discovery Mr. Gutierrez-Lopez does have, it appears that he was alleged to be removable under 8 U.S.C. § 1182(a)(6)(A)(i) for being "an alien present in the United States without being admitted or paroled. That section of the United States code corresponds with Section 212 of the Immigration and Nationality Act (hereinafter "INA"), specifically INA § 212(a)(6)(A)(i). For the sake of consistency, instead of referring to the INA, Mr. Gutierrez-Lopez will refer to the applicable sections of the INA as codified in Title 8 of the United States Code.

assistance of an attorney, Mr. Gutierrez-Lopez signed the stipulated deportation request, admitting that the factual allegations in the Notice to Appear were true and correct and waiving his right to a hearing before an immigration judge. See Exhibit B. Mr. Gutierrez-Lopez signed the stipulation even though he did not read the entire form and did not understand its contents. On January 25, 2008, the Department of Homeland Security filed a written concurrence with the stipulated order of removal. See Exhibit C (January 25, 2008, Concurrence of the Department of Homeland Security With The Stipulated Order of Removal). That same day, Immigration Judge (hereinafter "IJ") Henry P. Ipema signed a written order of removal, ordering Mr. Gutierrez-Lopez be removed to Mexico as charged in the Notice to Appear. See Exhibit D (January 25, 2008 Order of Removal). Nowhere on the order is any determination that Mr. Gutierrez-Lopez's waiver of a hearing before the immigration judge was voluntary, knowing, and intelligent. In fact, Mr.Gutierrez-Lopez never saw an immigration judge at all. On January 29, 2008, Mr. Gutierrez-Lopez was physically removed from the United States to Mexico. See Exhibit E (January 29, 2008 Warrant of Removal).

On February 15, 2008, Mr. Gutierrez-Lopez was arrested 18 miles east of the Tecate, California Port of Entry. He was brought into federal criminal custody and charged with being a deported alien found in the United States, in violation of 8 U.S.C. § 1326. On March 21, 2008, Mr. Gutierrez-Lopez plead guilty and was sentenced to 60 days of custody and 1 year of supervised release.[2] This was Mr. Gutierrez-Lopez's first criminal conviction. Following the termination of his custody, Mr. Gutierrez-Lopez was again placed into deportation proceedings. Instead of deporting Mr. Gutierrez-Lopez again, the Immigration and Naturalization Service (hereinafter "INS") reinstated the prior removal order of January 25, 2008. See Exhibit F (February 15, 2008 Notice of Intent/Decision to Reinstate Prior Order). Accordingly, Mr. Gutierrez-Lopez never saw an immigration judge and was again physically removed to Mexico on April 14, 2008. See Exhibit G (April 14, 2008 Warrant of Removal).

On July 24, 2008, Mr. Gutierrez-Lopez was arrested 18 miles northeast of the Tecate, California Port of Entry. On September 24, 2008, Mr. Gutierrez-Lopez was indicted for being a deported alien found in the United States, in violation of 8 U.S.C. § 1326. He has entered a not guilty plea. These motions follow.

//

---

[2] See United States v. Gutierrez-Lopez, 08-CR-744-JLS (S.D. Cal. 2008).

**II.**

**MOTION TO COMPEL DISCOVERY AND PRESERVE EVIDENCE**

Mr. Gutierrez-Lopez moves for production of the following discovery. This request is not limited to those items that the prosecutor knows of, but rather includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989). Specifically, Mr. Gutierrez-Lopez moves for the production of the following evidence:

1. **Mr. Gutierrez-Lopez's Statements.** Mr. Gutierrez-Lopez requests the government disclose any and all written, recorded and oral statements made by him, as well any written summaries of his oral statements contained in the handwritten notes of any Government agent. Fed. R. Crim. P. 16(a)(1)(A). The Advisory Committee Notes and the 1991 amendments to Rule 16 make clear that the Government must reveal <u>all</u> of Mr. Gutierrez-Lopez's statements, whether written or oral, regardless of whether the Government intends to make any use of those statements. **Mr. Gutierrez-Lopez specifically requests all audio and videotaped copies of his statements and any rough notes taken pertaining to the substance of his statements. Mr. Gutierrez-Lopez requests that the government provide him with a court-certified transcript of the compact disc depicting Mr. Gutierrez-Lopez's post-arrest interrogation by the agents. Furthermore, pursuant to Fed. R. Crim. P. 16(a)(1)(B)(i), Mr. Gutierrez-Lopez requests copies of the audio tapes of any taped telephone call made while he was or is in custody.**

2. **Arrest Reports, Notes and Dispatch Tapes.** Mr. Gutierrez-Lopez requests the Government to turn over all arrest reports, notes, dispatch or any other tapes and TECS records that relate to the circumstances surrounding his arrest or any questioning. This request includes, but is not limited to, any rough notes, records, reports, transcripts or other documents in which statements of Mr. Gutierrez-Lopez or any other discoverable material is contained. Such material is discoverable under Fed. R. Crim. P. 16(a)(1)(A) and Brady v. Maryland, 373 U.S. 83 (1963). The Government must produce arrest reports, investigator's notes, memos from arresting officers, dispatch tapes, sworn statements, and prosecution reports pertaining to Mr. Gutierrez-Lopez. See Fed. R. Crim. P. 16(a)(1)(B) and (c), Fed. R. Crim. P. 26.2. **Specifically, Mr. Gutierrez-Lopez requests copies of any Report of Investigation ("ROI") or Record of Deportable/Inadmissible Alien ("I-213") written in his case.**

3. **Mr. Gutierrez-Lopez's "A-File."** Mr. Gutierrez-Lopez requests <u>the Court enter an order giving him the opportunity for his attorney and/or a defense investigator to inspect and copy the entire contents of his immigration "A-File" at a time mutually convenient to both parties.</u>

4. <u>**Brady Material**</u>. Mr. Gutierrez-Lopez requests all documents, statements, agents' reports, and tangible evidence favorable to Mr. Gutierrez-Lopez on the issue of guilt and/or which affects the credibility of the Government's witnesses and the Government's case.  Under <u>Brady</u>, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused.  <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>United States v. Agurs</u>, 427 U.S. 97 (1976). Further, <u>Brady</u> requires the government disclose any information that may result in a lower sentence under the sentencing guidelines, notwithstanding its advisory nature, because it is exculpatory and/or mitigating evidence.

5. <u>**Mr. Gutierrez-Lopez's Prior Record.**</u>  Mr. Gutierrez-Lopez requests disclosure of his prior criminal record. Fed. R. Crim. P. 16(a)(1)(B).

6. <u>**Any Proposed 404(b) Evidence.**</u>  Evidence of prior similar acts is discoverable under Fed. R. Crim. P. 16(a)(1)(c) and Fed. R. Evid. 404(b) and 609.  In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature . . . ." of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. Mr. Gutierrez-Lopez requests the government "articulate <u>precisely</u> the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence." <u>United States v. Mehrmanesh</u>, 689 F.2d 822, 830 (9th Cir. 1982) (emphasis added; internal citations omitted); <u>see also</u> <u>United States v. Brooke</u>, 4 F.3d 1480, 1483 (9th Cir. 1993) (reaffirming <u>Mehrmanesh</u> and reversing convictions). Mr. Gutierrez-Lopez requests **three weeks notice before trial** to give the defense time to adequately investigate and prepare for trial.

7. <u>**Evidence Seized.**</u>  Mr. Gutierrez-Lopez requests production of evidence seized as a result of any search, either warrantless or with a warrant. Fed. R. Crim. P. 16(a)(1)(c).

8. <u>**Request for Preservation of Evidence.**</u>  Mr. Gutierrez-Lopez specifically requests the preservation of all physical evidence that may be destroyed, lost, or otherwise put out of the possession, custody, or care of the Government and which relates to the arrest or the events leading to the arrest in this case. This request includes, but is not limited to, the results of any fingerprint analysis, Mr. Gutierrez-

Lopez's personal effects, and any evidence seized from Mr. Gutierrez-Lopez.

9. **Tangible Objects.**  Mr. Gutierrez-Lopez requests the opportunity to inspect, copy, and test, as necessary, all other documents and tangible objects, including photographs, books, papers, documents, fingerprint analyses, or copies of portions thereof, which are material to the defense, intended for use in the Government's case-in-chief, or were obtained from or belong to Mr. Gutierrez-Lopez. Fed. R. Crim. P. 16(a)(1)(c). **Specifically, Mr. Gutierrez-Lopez requests copies of the audio tapes of his alleged prior deportations or removals.**

10. **Expert Witnesses.**  Mr. Gutierrez-Lopez requests the name, qualifications, and a written summary of the testimony of any person that the Government intends to call as an expert witness during its case in chief.  Fed. R. Crim. P. 16(a)(1)(E). The defense requests the notice of expert testimony be provided a minimum of two weeks prior to trial so the defense can properly prepare to address and respond to this testimony, including obtaining its own expert and/or investigating the opinions, credentials of the Government's expert and a hearing in advance of trial to determine the admissibility of qualifications of any expert. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999) (trial judge is "gatekeeper" and must determine, reliability and relevancy of expert testimony and such determinations may require "special briefing or other proceedings").

11. **Scientific and Other Information.**  Mr. Gutierrez-Lopez requests the results of any scientific or other tests or examinations conducted by any Government agency or their subcontractors in connection with this case.  See Fed. R. Crim. P. 16(a)(1)(D).

12. *Henthorn* **Material.**  Mr. Gutierrez-Lopez requests that the Assistant United States Attorney ("AUSA") assigned to this case oversee (not personally conduct) a review of all personnel files of each agent involved in the present case for impeachment material.  See Kyles v. Whitley, 514 U.S. 419 (1995) (holding that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the Government's behalf in the case, including the police"); United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991); United States v. Jennings, 960 F.2d 1488 (9th Cir. 1992) (AUSA may not be ordered to personally conduct examination of records; appropriate Government agency may review files and notify AUSA of contents as long as AUSA makes the determination regarding material to be disclosed); United States v. Herring, 83 F.3d 1120 (9th Cir. 1996) (accord).

13. **Evidence of Bias or Motive to Lie.**  Mr. Gutierrez-Lopez requests any evidence that any prospective Government witness is biased or prejudiced against Mr. Gutierrez-Lopez, or has a motive to falsify or distort his or her testimony.

14. **Impeachment Evidence.**  Mr. Gutierrez-Lopez requests any evidence that any prospective Government witness has engaged in any criminal act whether or not resulting in a conviction and whether any witness has made a statement favorable to Mr. Gutierrez-Lopez.  See Fed. R. Evid. 608, 609 and 613; Brady v. Maryland, 373 U.S. 83 (1963).

15. **Evidence of Criminal Investigation of Any Government Witness.**  Mr. Gutierrez-Lopez requests any evidence that any prospective witness is under investigation by federal, state or local authorities for any criminal conduct.

16. **Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling.**  Mr. Gutierrez-Lopez requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substances, or has ever been an alcoholic.

17. **Witness Addresses.**  Mr. Gutierrez-Lopez requests the name and last known address of each prospective Government witness.  Mr. Gutierrez-Lopez also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a Government witness.

18. **Name of Witnesses Favorable to Mr. Gutierrez-Lopez.**  Mr. Gutierrez-Lopez requests the name of any witness who made an arguably favorable statement concerning Mr. Gutierrez-Lopez or who could not identify him or who was unsure of his identity, or participation in the crime charged.

19. **Statements Relevant to the Defense.**  Mr. Gutierrez-Lopez requests disclosure of any statement relevant to any possible defense or contention that he might assert in his defense.

20. **Giglio Information & Agreements Between the Government and Witnesses.**  Pursuant to Giglio v. United States, 405 U.S. 150 (1972), Mr. Gutierrez-Lopez requests all statements and/or promises, express or implied, made to any witness, in exchange for their testimony in this case, and all other information which could be used for impeachment. Mr. Gutierrez-Lopez also requests discovery regarding

any other express or implicit promise, understanding, offer of immunity, of past, present, or future compensation, or any other kind of agreement, promise, or understanding, including any implicit understanding relating to criminal or civil income tax, forfeiture or fine liability, between any prospective Government witness and the Government (federal, state and/or local).  This request also includes any discussion with a potential witness about or advice concerning any contemplated prosecution, or any possible plea bargain, even if no bargain was made, or the advice not followed, and specifically includes any discussion with a potential witness regarding that witness' immigration status and/or any affect that the witness' statements or lack thereof might have on that status, including the granting or revoking of such immigration status or any other immigration status, including but not limited to citizenship, nationality, a green card, border crossing card, parole letter, or permission to remain in the United States.

21. **Informants and Cooperating Witnesses.**  Mr. Gutierrez-Lopez requests disclosure of the names and addresses of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in this case or otherwise participated in the crime charged against Mr. Gutierrez-Lopez.  The Government must disclose the informant's identity and location, as well as the existence of any other percipient witness unknown or unknowable to the defense. Roviaro v. United States, 353 U.S. 53, 61-62 (1957).  The Government must disclose any information derived from informants which exculpates or tends to exculpate Mr. Gutierrez-Lopez. Brady v. Maryland, 373 U.S. 83 (1963)

22. **Bias by Informants or Cooperating Witnesses.**  Mr. Gutierrez-Lopez requests disclosure of any information indicating bias on the part of any informant or cooperating witness. Giglio v. United States, 405 U.S. 150 (1972).  Such information includes, but is not limited to, any inducements, favors, payments or threats that were made to the witness in order to secure cooperation with the authorities.

23. **Jencks Act Material.**  Mr. Gutierrez-Lopez requests production in advance of trial of all material, including dispatch tapes, which the Government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500. Advance production will avoid the possibility of delay at trial to allow Mr. Gutierrez-Lopez to investigate the Jencks material.  A verbal acknowledgment that "rough" notes constitute an accurate account of the witness' interview is sufficient for the report or notes to qualify as a statement under § 3500(e)(1). Campbell v. United States, 373 U.S. 487, 490-92 (1963); see United States v. Boshell, 952 F.2d

1101 (9th Cir. 1991) (agent's interview notes reviewed with interviewee subject to Jencks Act).

24. **<u>Residual Request</u>.**  Mr. Gutierrez-Lopez intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States.  Mr. Gutierrez-Lopez requests that the Government provide him and his attorney with the above requested material sufficiently in advance of trial to avoid unnecessary delay prior to cross-examination.

### III.

### THE INDICTMENT MUST BE DISMISSED BECAUSE IT RELIES ON AN INVALID DEPORTATION

"In a criminal prosecution under § 1326, the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation." <u>United States v. Zarate-Martinez</u>, 133 F.3d 1194, 1197 (9th Cir. 1998).  Because a removal order is an element of the crime of illegal reentry after deportation, Mr. Gutierrez-Lopez has a Fifth Amendment right to collaterally attack his removal order. <u>United States v. Mendoza-Lopez</u>, 481 U.S. 828, 837-838 (1987). As the Supreme Court has said, "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." <u>Mendoza-Lopez</u>, 481 U.S. at 837-838; see also <u>United States v. Ubaldo-Figueroa</u>, 364 F.3d 1042, 1047-48 (9th Cir. 2004) (citing <u>Zarate-Martinez</u>, 133 F.3d at 1197 and <u>Mendoza-Lopez</u>, 481 U.S. at 837-838).

Under 8 U.S.C. § 1326(d), to successfully collaterally attack a deportation, a defendant must demonstrate: (1) exhaustion of all administrative remedies available to appeal the removal order; (2) the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) that the entry of the order was fundamentally unfair. See <u>Ubaldo-Figueroa</u>, 364 F.3d at 1048. Because Mr. Gutierrez-Lopez can meet all of these elements, the indictment must be dismissed.

//
//
//

A. **Mr. Gutierrez-Lopez is Exempt from § 1326(d)'s Exhaustion Requirement Because He Was Not Informed of His Eligibility for Voluntary Departure.**

Normally, a defendant charged with violating § 1326 who wishes to collaterally challenge his removal must have exhausted any administrative remedies available to him. See 8 U.S.C. § 1326(d)(1). However, a person eligible for relief from removal who is *not* advised by an immigration judge of a potential basis from relief is "exempted from the exhaustion requirement" of § 1326(d). United States v. Ortiz-Lopez, 385 F.3d 1202, 1204, (9th Cir. 2004) (quoting Ubaldo-Figueroa, 364 F.3d at 1047). Here, as discussed below, the immigration judge never advised Mr. Gutierrez-Lopez of his eligibility for voluntary departure under 8 U.S.C. § 1229c.[3] This failure to inform Mr. Gutierrez-Lopez of his eligibility for relief exempts him from the "exhaustion requirement" of § 1326(d). Ortiz-Lopez, 385 F.3d at 1204.

B. **By Not Determining Whether Mr. Gutierrez-Lopez's Appellate Waiver Was "Considered and Intelligent" and By Not Informing Mr. Gutierrez-Lopez of His Eligibility for Voluntary Departure, He Was Deprived of the Opportunity of Judicial Review.**

A defendant seeking to collaterally challenge a deportation under § 1326(d) must show that he was improperly denied the opportunity for judicial review. See 8 U.S.C. § 1326(d)(2). An appellate waiver does not comport with due process if it is not considered and intelligent. Ubaldo-Figueroa, 364 F.3d at 1043 ; see also Mendoza-Lopez, 481 U.S. at 840 ("Because the waivers of their rights to appeal were not considered or intelligent, respondents were deprived of judicial review of their deportation proceeding."). An alien's waiver of his right to appeal his deportation order is not "considered and intelligent" if the alien is (1) not *personally* informed of his right to appeal; or (2) where the immigration judge fails to advise the alien of the possibility of relief from deportation. Ubaldo-Figueroa, 364 F.3d at 1049 ("An alien can not make a valid waiver of his right to appeal a removal order if an immigration judge does not expressly and personally inform the alien that he has the right to appeal."). Moreover, it is the government's burden to establish by "clear and convincing evidence" that the waiver is "considered and intelligent." Gete v. INS, 121 F.3d 1285, 1293 (9th Cir.1997); United States Lopez-Vasquez, 1 F.3d 751, 753-54 (9th Cir. 1993) (en banc); see also United States v. Gonzalez Mendoza, 985 F.2d 1014, 1017 (9th Cir. 1993) (finding a due process violation where immigration judge failed to inquire whether right to appeal was knowingly and voluntarily

---

[3.] 8 U.S.C. § 1229c refers to INA § 240B.

waived). As explained in detail below, Mr. Gutierrez-Lopez did not make a "considered and intelligent" waiver of his appellate rights. First, the immigration judge never made a specific finding that Mr. Gutierrez-Lopez' stipulated deportation, including a waiver of his right to appeal, was "voluntary, knowing, and intelligent" as required by 8 C.F.R. § 1003.25. Second, the immigration judge never advised Mr. Gutierrez-Lopez of his eligibility for a voluntary departure. Therefore, Mr. Gutierrez-Lopez was denied the opportunity for judicial review.

**C.     The Entry of the Removal Order Was "Fundamentally Unfair" Because Mr. Gutierrez-Lopez's Stipulated Deportation Was Invalid As A Matter of Law and The Immigration Judge Did Not Inform Him of His Eligibility for Voluntary Departure.**

"An underlying removal order is 'fundamentally unfair' if: (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects.'" Ubaldo-Figueroa, 364 F.3d at 1048 (citing Zarate-Martinez, 113 F.3d at 1197) (internal brackets omitted). Here, both of these prongs are met. Mr. Gutierrez-Lopez' stipulated deportation violated due process because it did not comport with the requirement in 8 C.F.R. § 1003.25(b) that an immigration judge find the stipulated deportation was entered into "knowingly, voluntarily and intelligently." Mr. Gutierrez-Lopez also suffered prejudice as a result of this defect because he was not informed that he was eligible for a voluntary departure.

**1.     Mr. Gutierrez-Lopez's Due Process Rights Were Violated Because The Immigration Judge Never Found That His Waiver of a Hearing Before an Immigration Judge Was Knowingly, Voluntarily and Intelligently Entered as Required by 8 C.F.R. § 1003.25(b).**

In 8 U.S.C. § 1229a(d), Congress permitted the Attorney General to establish procedures for effectuating a "stipulated removal." Specifically, 8 U.S.C. § 1229a(d) states

> The Attorney General shall provide by regulation for the entry by an immigration judge of an order of removal stipulated to by the alien (or the alien's representative) and the Service. A stipulated order shall constitute a conclusive determination of the alien's removability from the United States.

The regulation governing stipulated removals is found in 8 C.F.R. § 1003.25. When an individual is unrepresented at a deportation proceeding, 8 C.F.R. § 1003.25(b) states the immigration judge "must determine that the alien's waiver is *voluntary, knowing, and intelligent*." 8 C.F.R. § 1003.25(b) (emphasis added). As is clear from the plain language of the statute, a statement in the stipulation that the individual's

waiver of a hearing before the immigration judge is "voluntary, knowing and intelligent" is insufficient alone. Instead, the immigration judge must make a specific determination regarding the effectiveness of the waiver. In fact, 8 C.F.R. § 1003.25(b)(6) requires that the stipulation contain "[a] statement that the alien understands the consequences of the stipulated request and that the alien enters the request voluntarily, knowingly, and intelligently."

There are numerous unpublished decisions of the Board of Immigration Appeals remanding stipulated deportation orders because there was no independent inquiry by the immigration judge to determine whether the stipulation and waiver of a hearing before the immigration judge is "voluntary, knowing and intelligent." See In re Medrano-Umanzor, 2006 WL 3088805 (BIA 2006) (per curiam) ("The Immigration Judge's decision does not address this regulatory requirement. We therefore find that a remand is warranted in this case in order to allow the Immigration Judge to make the requisite factual findings, in accordance with 8 C.F.R. § 1003.25(b), and enter a new decision."); In re Lagunes-Huerta, 2005 WL 3709274 (BIA 2005) (The regulation requires that, where the respondent is unrepresented, the Immigration Judge "must determine that the alien's waiver is voluntary, knowing, and intelligent." The "Decision and Order of the Immigration Judge" does not address this regulatory requirement, and we will therefore remand the case to the Immigration Judge for further consideration and necessary fact finding."); compare with In re Young, 2006 WL 3485805 (BIA 2006) (finding stipulated deportation valid because parties signed waiver in front of immigration judge).[4]

Additionally, at least two district courts, including one here in the Southern District of California, have dismissed indictments for 8 U.S.C. § 1326 based on a stipulated deportation when there was "no evidence the IJ engaged in any fact-finding efforts to determine the validity of Defendant's waiver[.]" United States v. Vasquez-Villegas, 2006 WL 2546714 at *1 (E.D.Wash. Sept. 1, 2006); see also United States v. Nicolas Cesareo, 08-CR-201-W (S.D. Cal. 2008) (dismissing § 1326 indictment because "the immigration judge at that [removal] proceeding must make an independent determination that the defendant had made a knowing, intelligent and voluntary waiver of his right to a hearing. There is no record of any

---

[4.] Copies of these cases are attached to this motion as Exhibit H.

evidence that was done." ).[5]

This requirement of a finding by an immigration judge that the waiver is "voluntary, knowing and intelligent" is more than just a requirement under the Code of Federal Regulations but a requirement of due process. As the Supreme Court has stated, deportation

> visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty - at times a most serious one - cannot be doubted. Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness.

Bridges v. Wixon, 326 U.S. 135, 154 (1945). Thus the burden rests on the government to prove "an intentional relinquishment or abandonment of a known right or privilege." Brewer v. Williams, 430 U.S. 387, 404 (1977). Courts should "indulge every reasonable presumption against waiver." Barker v. Wingo, 407 U.S. 514, 525 (1972) (citations and quotations omitted).

Turning to Mr. Gutierrez-Lopez' case, there is no evidence that the Immigration Judge found Mr. Gutierrez-Lopez' waiver to be voluntary, knowing and intelligent as required by INS regulations. The order itself does not contain any statement that "the alien understands the consequences of the stipulated request and that the alien enters the request voluntarily, knowingly, and intelligently" as required by 8 C.F.R. § 1003.25(b)(6). See Exhibit D.  Additionally, the government cannot prove that Mr. Gutierrez-Lopez understood the rights he was giving up by signing the stipulated deportation. Although Mr. Gutierrez-Lopez signed the stipulation, including the statement that his stipulation request was made "voluntarily, knowingly, and intelligently," it is not a foregone conclusion that he understood his rights and what he was signing.

Mr. Gutierrez-Lopez only completed the ninth grade in Mexico and did not understand the complicated, legal terms in the stipulation. See Exhibit A. Two Border Patrol agents spoke with Mr. Gutierrez-Lopez with five other individuals present and did not explain in any detail what they were signing. Specifically, the agents did not explain to Mr. Gutierrez-Lopez that he was signing a stipulation to be deported rather than voluntarily returned to Mexico. This is highlighted by the fact that nowhere on the stipulation does it explain that Mr. Gutierrez-Lopez was being "deported." Instead, the stipulation consistently states that Mr. Gutierrez-Lopez was entering a "stipulated request for *removal*." For an

---

[5.] The transcript of Judge Whelan's decision in United States v. Nicolas Cesareo, 08-CR-201-W (S.D. Cal. 2008) is attached as Exhibit I.

uneducated and unsophisticated man such as Mr. Gutierrez-Lopez, the use of the legal term of art "removal" as opposed to "deportation" led Mr. Gutierrez-Lopez to believe that he was simply being voluntarily returned to Mexico instead of being "deported" from the United States.

Most importantly, Mr. Gutierrez-Lopez was not represented by an attorney at the deportation proceedings. The complexity of immigration law is the driving reason 8 C.F.R. § 1003.25 requires an immigration judge "determine that the alien's waiver is voluntary, knowing, and intelligent." 8 C.F.R. § 1003.25(b). In the absence of the advise of counsel, it is up to the immigration judge to ensure that an individual signing a stipulated deportation fully understands what he is signing and the rights he is giving up by agreeing to a stipulated order of removal. It is also the immigration judge's duty to determine whether an individual is entitled to relief under the immigration law and advise the individual of his eligibility for relief from deportation. The absolute failure of the immigration judge to comply with the requirements of 8 C.F.R. § 1003.25 demonstrates that the stipulated deportation does not comport with due process.

"It is a well-known maxim that agencies must comply with their own regulations." Confederated Tribes and Bands of Yakima Indian Nation v. F.E.R.C., 746 F.2d 466, 474 (9th Cir. 1984). In United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954), the Supreme Court vacated a deportation order issued by the Board of Immigration Appeals because the order violated INS regulations. As one Court has noted in interpreting Accardi, "[a]n agency of the government must scrupulously observe rules, regulations, or procedures which it has established. When it fails to do so, its action cannot stand and courts will strike it down." United States v. Heffner, 420 F.2d 809, 811 (4th Cir. 1969). Here, the INS failed to "scrupulously observe rules, regulations or procedures which it has established." Id. By failing to make a specific factual finding as required by 8 C.F.R. § 1003.25(b) that Mr. Gutierrez-Lopez' waiver was voluntary, knowing, and intelligent, the administrative decision deporting Mr. Gutierrez-Lopez "cannot stand." Id. Therefore, the deportation cannot serve as a basis for a criminal charge under 8 U.S.C. § 1326 and the indictment must be dismissed.

    **2.**    **Because the Stipulated Deportation Is Invalid As Matter of Law, Mr. Gutierrez-Lopez Is Not Required to Show Any Prejudice.**

Mr. Gutierrez-Lopez could not have been deported because the stipulated deportation request did not comply with the requirements of 8 C.F.R. § 1003.25. Since the order itself was invalid as a matter of

law, no showing of prejudice is necessary. In <u>United States v. Nicolas Cesareo</u>, 08-CR-201-W (S.D. Cal. 2008), Judge Whelan found that the defendant's due process rights were violated simply by the fact that the immigration judge did not make a finding that the waiver of a deportation hearing was knowingly, intelligently and voluntarily made. <u>See</u> Exhibit I, Transcript of June 23, 2008 proceedings in <u>United States v. Nicolas Cesareo</u>, 08-CR-201-W (S.D. Cal. 2008) at 6:24-7:10. Similarly, this Court should find that no prejudice is necessary when a deportation proceeding does not comply with due process and the statutory and regulatory requirements are violated. Because Mr. Gutierrez-Lopez's stipulated deportation is invalid as a matter of law, the indictment must be dismissed.

### 3. Even if Mr. Gutierrez-Lopez is Required to Show that He Suffered Prejudice, He Did Because He Was Eligible for Voluntary Departure Pursuant to 8 U.S.C. § 1229c.

The defect in Mr. Gutierrez-Lopez' deportation proceeding is exacerbated because had an immigration judge personally examined Mr. Gutierrez-Lopez' case, he likely would have advised him that he was eligible for voluntary departure. The failure of the immigration judge to advise Mr. Gutierrez-Lopez of this form of relief makes his deportation proceeding defective and the prejudice he suffered as a result of this defect requires the indictment be dismissed.

#### a.   An Immigration Judge Must Advise An Individual of Relief From Deportation.

A deportation hearing is defective if an individual is eligible for relief from deportation but the immigration judge does not tell him so. <u>See United States v. Muro-Inclan</u>, 249 F.3d 1180, 1183-84 (9th Cir. 2001) (citation omitted); <u>see also</u> <u>United States v. Pallares-Galan</u>, 359 F.3d 1088, 1103 (9th Cir. 2004) (deportation proceeding fundamentally unfair because immigration judge did not inform alien of eligibility for cancellation of removal under 8 U.S.C. § 1229b); <u>United States v Arrieta</u>, 224 F.3d 1076, 1079 (9th Cir. 2000) (deportation proceeding fundamentally unfair because immigration judge did not inform alien of eligibility of relief under 8 U.S.C. § 1182(h)).

To establish prejudice, Mr. Gutierrez-Lopez does not have to show that he would have been granted relief. Instead, he need only show that he had a "'plausible' ground for relief from deportation." <u>Ubaldo-Figueroa</u>, 364 F.3d at 1050 (citing <u>Arrieta</u>, 224 F.3d at 1079). As the Ninth Circuit has explained, prejudice means that "the outcome of the proceedings *may have been affected* by the alleged violation." <u>Zolotukhin v. Gonzales</u>, 417 F.3d 1073, 1076 (9th Cir. 2005) (emphasis in original). "The standard does not demand

absolute certainty; rather prejudice is shown if the violation '*potentially* . . . affects the outcome of the proceedings.'" Id. at 1077 (citing Agyeman v. INS, 296 F.3d 871, 884 (9th Cir. 2002)) (emphasis in original). For example, in Zolutukhin the government argued that the petitioner lacked good character and thus would not have been able to prevail on his claims. Zolutukhin, 417 F.3d at 1077. The Ninth Circuit rejected this argument, noting that "even a petitioner with purportedly bad character and possibly a weak case has a right to a fair hearing." Id. Because the outcome of the case may have been different absent the due process violations, the case was remanded for a new hearing. Id.

### b. Mr. Gutierrez-Lopez Was Not Informed That He Was Eligible for Voluntary Departure.

The statute for voluntary departure, 8 U.S.C. § 1229c(a)(1), states in pertinent part:

> The Attorney General may permit an alien voluntarily to depart the United States at the alien's own expense under this subsection, in lieu of being subject to proceedings under section 1229a of this title or prior to the completion of such proceedings, if the alien is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4)(B) of this title.

The two classes of deportable individuals that are precluded from receiving one of the two pre-conclusion voluntary departures are individuals who have been convicted of an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii) or of terrorist activities under 8 U.S.C. § 1227(a)(4)(B). It is undisputed that at the time of his deportation in January 20, 2008, Mr. Gutierrez-Lopez had never been convicted of any crime at all, let alone an aggravated felony or a terrorism offense. Therefore since Mr. Gutierrez-Lopez was never adivsed that he was eligible for voluntary departure, he suffered prejudice as a result of his defective stipulated deportation. As the Ninth Circuit stated in Ortiz-Lopez, an individual "will have met all of the requirements for a successful collateral attack on his § 1326 conviction-provided he can show that he could in fact have received voluntary departure under § 1229c(a) at the time of his removal hearing." Ortiz-Lopez, 385 F.3d at 1204. Because Mr. Gutierrez-Lopez has shown that he could have received a voluntary departure, he has successfully collaterally attacked his deportation for purposes of his § 1326 prosecution. Therefore the indictment must be dismissed.

//

//

//

## IV.

## MOTION FOR LEAVE TO FILE ADDITIONAL MOTIONS

***Defense counsel has received 59 pages of discovery in this case.*** As more information comes to light, due to the Government providing additional discovery in response to these motions or an order of this Court, the defense may find it necessary to file further motions. It is, therefore, requested that defense counsel be allowed the opportunity to file further motions based upon information gained through the discovery process.

## V.

## CONCLUSION

For the foregoing reasons, Mr. Gutierrez-Lopez respectfully requests that the Court grant the above motions.

Respectfully submitted,

Dated: October 14, 2008

*s/ Hanni M. Fakhoury*
**HANNI M. FAKHOURY**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Gutierrez-Lopez

**INDEX TO EXHIBITS**

<u>United States v. David Gutierrez-Lopez</u>

08CR3238-WQH

Exhibit A: Declaration of David Gutierrez-Lopez .......................................... 1

Exhibit B: January 20, 2008 Stipulated Request for Removal Order and Waiver of Hearing ...... 4

Exhibit C: January 25, 2008, Concurrence of the Department of Homeland Security
With The Stipulated Order of Removal ..................................... 13

Exhibit D: January 25, 2008 Order of Removal ........................................ 15

Exhibit E: January 29, 2008 Warrant of Removal ...................................... 17

Exhibit F: February 15, 2008 Notice of Intent/Decision to Reinstate Prior Order .............. 20

Exhibit G: April 14, 2008 Warrant of Removal ........................................ 22

Exhibit H: Unpublished BIA Decisions ............................................... 25

Exhibit I: Reporter's Transcript of June 23, 2008 Proceedings in
<u>United States v. Nicolas Cesareo</u>, 08-CR-201-W (S.D. Cal. 2008) ................ 33

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of his information and belief, and that a copy of the foregoing document has been served this day upon:

Courtesy copy Court

Copy Assigned Assistant United States Attorney via ECF/NEF

Copy Client

                                                               Respectfully submitted,

Dated:  October 14, 2008                          /s/ *Hanni M. Fakhoury*
                                                            **HANNI M. FAKHOURY**
                                                             Federal Defenders of San Diego, Inc.
                                                             225 Broadway, Suite 900
                                                             San Diego, CA 92101
                                                             Phone:  619/234.8467
                                                             Fax:  619/687.2666
                                                             Email:  Hanni_Fakhoury@fd.org
                                                             Attorneys for Defendant